UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X

UNITED STATES OF AMERICA            **MEMORANDUM AND ORDER**

    - against -                 10-cr-809 (S-3)(KAM)

CHRISTOPHER BARRET et al.,
          Defendants.

------------------------------X

**MATSUMOTO, United States District Judge:**

        On October 7, 2010, Ryan Anderson ("Anderson" or the "defendant") was arrested at the residence of Christopher Barret, another defendant in the instant prosecution, after law enforcement agents executed a search warrant upon the home (the "Barret Residence"). Anderson is charged, together with others, in a third superseding indictment with (1) one count of conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(b)(1)(A)(vii)[1] and 846,[2] and 18 U.S.C. § 3551 *et seq.*[3]; (2) one count of distribution of marijuana in violation of 21 U.S.C.

---

[1] Under 21 U.S.C. § 841(b)(1)(A)(vii), any violation of 21 U.S.C. § 841(a)(1) that involves "1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 1,000 or more marijuana plants regardless of weight" is punishable by a term of imprisonment of at least ten years, or at least twenty years "if death or serious bodily injury results from the use of such substance."
[2] 21 U.S.C. § 846 provides that the penalties for conspiracy match those for the substantive underlying offense.
[3] 18 U.S.C. 3551 *et seq.* generally provides penalties for offenses described in any federal statute.

1

§§ 841(a)(1)[4] and 841(b)(1)(A)(vii), and 18 U.S.C. §§ 2[5] and 3551 *et seq.*; and (3) one count of use of a firearm in relation to drug trafficking crimes in violation of 18 U.S.C. §§ 924(c)(1)(A)(i),[6] 924(c)(1)(A)(iii), 924(c)(1)(A)(iii), 2 and 3551 *et seq.* (*See* ECF No. 304, Superseding Indictment ("S-3") ¶¶ 22, 25-26.)

The court assumes the parties' familiarity with the alleged facts underlying the Superseding Indictment as charged by the government and outlined by the court in its Memorandum and Order dated November 16, 2011. *See United States v. Barret*, No. 10-cr-809, --- F. Supp. 2d ---, 2011 WL 5579079, at *2-4 (E.D.N.Y. Nov. 16, 2011).

On September 16, 2011, Anderson moved to suppress his oral post-arrest statements on grounds that his arrest was unlawful because it was unsupported by probable cause. (*See* ECF No. 250, Defense's Pretrial Motions and Memorandum of Law in Support by Ryan Anderson ("Def. Mem.").) On October 27, 2011, the court granted a hearing upon

---

[4] 21 U.S.C. § 841(a)(1) makes it unlawful for any person to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."
[5] 18 U.S.C. § 2 provides, in relevant part: "Whoever . . . aids, abets, counsels, commands, induces or procures [the] commission" of an act or "willfully causes an act to be done" against the United States is punishable as a principal.
[6] Under 18 U.S.C. § 924(c)(1)(A)(i)-(iii), the use, possession, brandishment and discharge of a firearm in relation or in furtherance of a drug trafficking crime is punishable by a term of imprisonment of at least five years.

Anderson's submission of an affidavit based on personal knowledge that raised a disputed material factual issue warranting a hearing. (*See* Order dated 10/27/2011; ECF No. 278, Affidavit of Ryan Anderson ("Anderson Aff.").) On November 9, 2011, the court held an evidentiary hearing (the "suppression hearing"), during which the government presented two witnesses, Drug Enforcement Administration (DEA) Special Agent George McMillin and United States Postal Inspector Ajay Lall. (*See* Minute Entry dated 11/9/2011.) Defendant did not call any witnesses. (*Id.*)

The court ordered post-hearing supplemental briefing, and submissions were completed by December 5, 2011. (*See id.*) Upon consideration of the parties' written submissions--including defendant's affidavit and the testimony and evidence presented at the suppression hearing--and for the reasons stated below, the court respectfully denies Anderson's motion to suppress his post-arrest statements.

## FACTUAL FINDINGS

### A. Credibility of the Witnesses

Special Agent McMillin, whose hearing testimony the court finds credible, has been employed as a special agent for the DEA for approximately six years. (Transcript of Criminal Cause for Suppression Hearing ("Tr.") at 4.)

3

For the last five years, he has been assigned to the New York Drug Enforcement Task Force Group T42, which conducts domestic and international narcotics investigations. (*Id.* at 4:13-25.) Postal Inspector Lall, whose hearing testimony the court also finds credible, has worked as a Postal Inspector for the United States Postal Inspection Service for five years, and his current assignment involves intercepting and prohibiting shipments of narcotics through the mail delivery system. (*Id.* at 20:1-20.)

**B. Circumstances Surrounding Anderson's Arrest**

According to Anderson's affidavit, on the day of his arrest, he was at Barret's home, socializing with twenty or more individuals in the backyard, when he heard someone yell that the police were present. (Anderson Aff. ¶ 1.) As others in the yard began to flee, Anderson entered the Barret Residence to find out what was happening. (*Id.*) When he entered the house, police confronted him and began to ask him questions, to which he provided answers. (*Id.*)

Special Agent McMillin and Postal Inspector Lall were both present at the Barret Residence at the time of Anderson's arrest, but neither witnessed Anderson's arrest. (*See generally* Tr.) Because Special Agent McMillin was stationed outside the Barret Residence, providing perimeter

4

security as the Emergency Service Unit (ESU) officers executing the search warrant entered through the rear of the house, he did not observe or participate in Anderson's arrest. (*Id*. at 6:2-4,25; 7:1-2, 11-25; 17:17-18:4.) Special Agent McMillin first encountered Anderson when agents brought the defendant and other individuals who had been arrested in the backyard or interior of the Barret Residence to the driveway at the front of the home, where Special Agent McMillin and other members of his team searched and handcuffed the arrestees. (*Id*. at 8:1-6; 11:8-24; 12:10-15.)

Postal Inspector Lall testified that as agents executed the search warrant at the Barret Residence, he conducted "perimeter security" and was stationed two houses away from the Barret Residence. (*Id*. at 21:17-22:9; 42:14-23.) From that vantage point, Postal Inspector Lall could see only the side entrance and lawn area of the Barret Residence. (*Id*. at 42:24-43:2.) Consequently, he did not know where Anderson was when agents executed the search warrant, or where agents apprehended him.[7] (*Id*. at 43:20-22; 44:12-14.)

---

[7] Because the defendant rests his motion to suppress solely on the lawfulness of his arrest, the court need not discuss the timing or means by which defendant was advised of his *Miranda* rights. The court notes, however, that Postal Inspector Lall testified that after Anderson was transported to the 113th Precinct, he and Postal Inspector

5

### C. Observations Inside and Around the Barret Residence

Special Agent McMillin testified that he observed approximately six marijuana plants, each approximately three feet high in the backyard of the house. (Tr. at 15:6-12.) When he eventually entered the Barret Residence, Special Agent McMillin observed numerous large cardboard boxes and "a lot of little Styrofoam packing peanuts all over the floor." (*Id*. at 12:18–24.) He also saw a video monitoring system, a scale and "two large bales of marijuana" --each of which measured "approximately a foot-and-a-half long and then maybe five inches high" and was wrapped in duct tape--in the kitchen. (*Id*. at 12:16-13:23.) Special Agent McMillin also testified that on the floor of the living room, he observed a semiautomatic handgun, which he later learned was loaded. (*Id*. at 14:14-24.) Special Agent McMillin also observed a bag of marijuana, a computer monitoring system, some money and two computers in an upstairs master bedroom. (*Id*. at 14:25-15:1-5.)

Postal Inspector Lall's testimony revealed that he made similar observations in the kitchen and a living room area: when he entered the Barret Residence, he

---

Chris Neilson escorted Anderson from a holding cell to the detective squad to interview the defendant. (Tr. at 25-28.) At that time, Postal Inspector Lall advised Anderson of his *Miranda* rights, which the defendant acknowledged, read and waived. (*Id*. at 29-37.)

noticed bundles of marijuana on the kitchen counter and packing materials, foam peanuts and boxes. (*Id*. at 23:15-19; 24:8-13.) He also saw a recovered gun in an evidence bag. (*Id*. at 23:23-24:4.)

## **DISCUSSION**

The parties dispute whether Anderson's warrantless arrest was lawful. Anderson argues that there was no probable cause to support his arrest because law enforcement officials did not make any "observations . . . of an incriminating nature" before arresting him and "all the arresting officers knew of Ryan Anderson was that he walked in the house [of Barret] after the police arrived." (Def. Mem. at 12-13.) Anderson also points out that neither Special Agent McMillin nor Postal Inspector Lall testified that they observed him engaging in any activity that would have given rise to a finding of probable cause to justify his warrantless arrest. (ECF No. 313, Post-Suppression Hearing Memorandum of Law in Support of Anderson's Motion to Suppress Statements ("Def. Post-Hr'g Mem.") at 1-2.)

The government opposes Anderson's motion, arguing that the arrest was supported by probable cause based on the totality of the circumstances surrounding his arrest--including agents' observation of Anderson's "furtive

7

behavior," the recovery of a loaded firearm in close proximity to the defendant; and his presence in and around the Barret Residence, where marijuana was observed in plain sight.[8]  (ECF No. 314, Government's Post-Suppression Hearing Letter Brief ("Gov't Post-Hr'g Br.") at 3-5.)

**A. Legal Standard**

"The Fourth Amendment right to be free from unreasonable seizures 'includes the right to be free from arrest absent probable cause.'"  *Torraco v. Port Auth. of New York and New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010) (quoting *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.

---

[8] The government also argues that Anderson's affidavit is "demonstrably false" and "postulat[es] a factual scenario that is directly contradicted by video evidence."  (Gov't Post-Hr'g Br. at 1.)  The video evidence to which the government refers was not introduced as evidence during the suppression hearing, although it was disclosed to defense counsel in Rule 16 discovery and is attached to the government's post-hearing brief. (*See id*.)  In adjudicating the instant motion, the court will not consider or rely on the government's video evidence, however.  First, the video itself has not been admitted into evidence and therefore is not part of the record.  Second, even if the video were in evidence, the identity of any individual who appears in the video is unknown to the court based on the video alone.  Although the government attorney makes unsworn statements in its post-hearing brief to explain events involving Anderson that are purportedly depicted in the video (*see id*. at 1-2), the government has not submitted any supporting affidavit from an individual with personal knowledge of such facts on the video recordings, and the court cannot rely on an attorney's allegations in making its findings of fact.  *See United States v. Marquez*, 367 F. Supp. 2d 600, 603 (S.D.N.Y. 2005) (where facts supporting government's contention that a stop was justified by reasonable suspicion were based on "unsworn statements made by the Assistant United States Attorney in the Government's Memorandum of Law concerning the substance of recordings that [were] not in evidence, and the Government failed to submit any supporting affidavit from persons with personal knowledge of the facts concerning the information on the recordings," the court held that "[t]hese attorney allegations cannot provide the Court with a basis for making a finding of fact" based on the recordings); *see also Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir. 2003) (noting that a memorandum of law "is not evidence at all").

2006)). The Supreme Court "repeatedly has explained that 'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)); *see also Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

Where police have probable cause to believe an individual has committed or is committing a crime, the police may arrest that individual without a warrant. *Draper*, 358 U.S. 307, 310-11 (1959). The existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest," without regard to "the officer's state of mind (except for the facts that he knows)." *Devenpeck v. Alford*, 543 U.S. 146, 152-153 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) and *Whren v. United States*, 517 U.S. 806, 812-13 (1996) (reviewing cases)).

**B. Application**

The court finds that when law enforcement agents who were executing a search warrant at the Barret Residence on October 7, 2010, encountered Anderson in the home, they had probable cause to arrest him based on the totality of the circumstances. The record reflects that when the agents lawfully entered the Barret Residence pursuant to a search warrant (*see* ECF No. 276, Ex. A, Affidavit in Support of Search Warrant), they found in plain view nine cardboard boxes that resembled other boxes that law enforcement officers had observed to contain marijuana and had observed Barret and Wilson, another co-defendant, unloading from the delivery facility into vehicles and into the home of Barret on occasions and on the same day. During the search, the officers found a green leafy substance in each box that subsequently tested positive for marijuana. (ECF No. 1, Criminal Complaint ("Compl.") at ¶¶ 7, 10, 13, 16.) The agents also saw large bales of marijuana on the kitchen counter, a black garbage bag full of marijuana, heat-sealer machines, narcotics packaging materials consistent with those found during prior trash inspections at the Barret Residence, and a loaded, semiautomatic pistol on the living-room floor. (*Id*. at ¶ 16.)

The testimony of Special Agent McMillin and Postal Inspector Lall lend further support to the sworn allegations in the criminal complaint. Both witnesses testified at the suppression hearing that when they entered Barret's home on the day of Anderson's arrest, they observed numerous, large boxes and packing materials in the kitchen. (Tr. at 12:16-24; 24:11-13.) They also observed two large bales of marijuana in plain view. (*Id.* at 12:16-13:2; 13:15-23; 23:15-19; 24:6-10.) Special Agent McMillin also testified that he saw six three-foot-high marijuana plants growing in a plot of earth in the backyard and a loaded semiautomatic handgun on the floor of the living room. (*Id.* at 14:14-24, 15:6-12.)

The criminal complaint states that Anderson was inside the Barret Residence when officers conducted their search of the house. (Compl. at ¶ 16.) Although Special Agent McMillin and Postal Inspector Lall were unable to confirm or deny that statement, Anderson himself acknowledges it in his sworn affidavit: he states that as others fled from the Barret Residence upon the arrival of police and law enforcement agents, he entered the home because he was "curious as to what was happening." (Anderson Aff. at ¶ 1.)

Given the totality of the foregoing circumstances, the court finds that a prudent person, or one of reasonable caution, would believe that Anderson--an individual found in a home in which drug contraband and a loaded weapon were found in plain view--committed or was in the process of committing a crime. Consequently, there was probable cause to support his arrest.

Although Anderson relies heavily on the argument that the court cannot find sufficient probable cause to support the arrest because the complaint does not allege--and neither witness testified at the suppression hearing--that officers observed him engaging in behavior that gave rise to probable cause prior to his arrest (*see* Def. Mem. at 12-13; Def. Post-Hr'g Mem. at 2; Anderson Aff. ¶ 3), this argument lacks merit. In *United States v. Heath*, 455 F.3d 52 (2d Cir. 2006), the Second Circuit noted that officers who lawfully entered a home pursuant to a search warrant and observed bags of cocaine in plain view could reasonably have concluded that an occupant present in that home at the time had committed or was committing a crime. *Id*. at 57. Consequently, where "there is no evidence that any precautions were taken to prevent people in the house from coming across the putatively visible contraband," the Second Circuit went on to state, "reasonably cautious

police officers could have concluded that the home's adult occupants were complicit in the illegal activities involving the contraband" and "[i]t follows that the law enforcement officials seemingly had a valid ground for arresting both of the adult occupants of the . . . residence." *Id.; see also United States v. MacDonald*, 916 F.2d 766, 770 (2d Cir. 1990) (holding that undercover agent's observation of cocaine and marijuana in plain view throughout an apartment containing six men provided probable cause for warrantless arrest of all six occupants).

Here, as in *Heath*, officers who entered the Barret Residence under the authority of a search warrant discovered "putatively visible contraband," and therefore had probable cause to arrest Anderson, who was present in the Barret home at the time of the search. Accordingly, because there was probable cause to support Anderson's warrantless arrest, the court finds that the arrest was lawful and denies Anderson's motion to suppress his post-arrest statements.

/

/

/

## CONCLUSION

For the foregoing reasons, the court denies Anderson's motion to suppress his post-arrest statements.

**SO ORDERED.**

Dated:  December 12, 2011
        Brooklyn, New York

                                    _____/s/_____
                                    **KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York